**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Case No. 15 C 9537 |
| | ) | |
| TYRONE KIRKLIN | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In January 2011, Tyrone Kirklin was charged with aiding and abetting an armed bank robbery in violation of 18 U.S.C. §§ 2113 and 2 (count one) and aiding and abetting the use and carrying of a firearm during and in relation to that robbery in violation of 18 U.S.C. § 924(c)(1)(A) (count two). A jury convicted Kirklin on both counts after a three-day trial in August 2011, and in July 2012 the Court sentenced him to consecutive prison terms of eighty-seven months on count one and eighty-four months on count two.

On appeal, Kirklin challenged his conviction on the ground that the Court inadequately instructed the jury as to aiding and abetting. He also challenged his sentence on the ground that the seven-year mandatory minimum under 18 U.S.C. § 924(c)(1)(A)(ii) should not have been imposed in the absence of a jury finding that his accomplices brandished a firearm during the robbery. The court of appeals affirmed the conviction and sentence. *United States v. Kirklin*, 727 F.3d 711 (7th Cir. 2013).

Kirklin has filed a *pro se* motion under 28 U.S.C. § 2255. He contends that his trial counsel rendered ineffective assistance in three ways: by failing to object to the sentencing enhancement under section 924(c)(1)(A)(ii), by declining to issue subpoenas

to businesses neighboring the robbed bank requesting video footage from security cameras they might operate, and by failing to cross-examine a government witness or call an accomplice to testify. Kirklin also argues that the government's attorneys committed prosecutorial misconduct by "vouching for" and introducing the testimony of another accomplice despite knowing that she had previously given contradictory statements to law enforcement. Finally, Kirklin seeks relief under section 2255 based on his actual innocence.

For the reasons stated below, the Court overrules Kirklin's claims and denies his motion under section 2255.

**Background**

A grand jury indicted Kirklin on charges that he aided and abetted an armed bank robbery and aided and abetted the use and carrying of a firearm during and in relation to that robbery. At trial, the government introduced evidence and testimony to show that on a morning in November 2010, Kirklin approached his friend, Tiffany Jones, to recruit her to help him rob a bank. Jones testified at trial that she agreed to participate after Kirklin showed her a TEC-9 semi-automatic firearm and a .38 caliber revolver that he had stashed in his van. According to Jones, Kirklin drove her in his van to pick up his cousin, Justice McCallister, and the three of them made their way to the bank.

On the way to the bank, the evidence showed, the trio discussed their plan for the robbery. Kirklin instructed Jones to stand guard in the lobby and prevent customers from entering or exiting the bank while McCallister found a way into the bank's vault. Kirklin also told Jones that one advantage of using his revolver was that it would not leave shell casings if she fired it.

The government called as a witness the bank's fraud investigator, James Seidl, who explained security footage from video cameras inside and outside the bank that captured scenes from the robbery. The video showed Jones carrying the TEC-9 and .38 caliber revolver and McCallister carrying his own firearm. Holding both of Kirklin's firearms, Jones prevented customers from leaving the bank while McCallister forced tellers to fill a backpack with the cash in their drawers.

The government also introduced testimony from a bank teller and a customer who were present during the robbery. Both of these witnesses testified that Jones and McCallister brandished their firearms during the robbery. When one customer attempted to escape the bank, Jones put a gun to the back of her neck and forced her back into the bank's lobby. After McCallister had collected the money from the tellers and ordered the customers into the bank's vault, Jones and McCallister departed. Police arrested both of them shortly thereafter, near the bank. According to Kirklin, McCallister gave two statements to police, one denying knowledge of Kirklin's involvement in the robbery and the other implicating Kirklin. McCallister did not testify at trial, and the jury did not hear about either of these statements. Jones implicated Kirklin in a post-arrest statement and testified both before the grand jury and at Kirklin's trial.

At the end of a three-day jury trial, Kirklin was convicted on both counts. The presentence investigation report recommended a seven-year sentence on count two due to the mandatory minimum sentence for cases in which a firearm is "brandished." *See* 18 U.S.C. § 924(c)(1)(A)(ii). Kirklin did not object to this recommendation or to the Court (rather than the jury) determining whether brandishing had occurred; indeed, then-controlling Supreme Court precedent provided that it was not error for a judge to

3

make the necessary finding on the issue of brandishing rather than a jury. *See Harris v. United States*, 536 U.S. 545 (1986). The Court determined at sentencing that the evidence supported a finding of brandishing because Kirklin was willing to have other people brandish guns on his behalf and guns were in fact brandished. The Court accordingly sentenced Kirklin to consecutive prison terms of eighty-four months (seven years) on count two and eighty-seven months on count one.

Kirklin challenged his conviction and his sentence before the Seventh Circuit. He argued that his conviction should be vacated because the Court gave inadequate instructions to the jury concerning aiding and abetting the use and carrying of a firearm during a robbery. He also argued that the appellate court should remand his case for resentencing because it was improper for this Court to impose a higher mandatory minimum based on a judicial finding that brandishing had occurred. To apply a higher mandatory minimum, Kirklin argued, a jury should have been required to find brandishing beyond a reasonable doubt.

This latter argument mirrored one that had been recently made before the Supreme Court of the United States. In *Alleyne v. United States*, 133 S. Ct. 2151 (2013), the defendant was convicted of robbery affecting interstate commerce under 18 U.S.C. § 1951(a) and using or carrying a firearm in relation to a crime of violence under 18 U.S.C. § 924(c)(1)(A). The defendant objected to the presentence report's recommendation of a seven-year sentence on the section 924(c) count based on the mandatory minimum for brandishing a firearm under section 924(c)(1)(A)(ii). He argued that because the jury had not found brandishing beyond a reasonable doubt, he could be subjected only to the five-year mandatory minimum for "us[ing] or carr[ying] a

4

firearm" under section 924(c)(1)(A)(i).  After Kirklin's case had been submitted to the Seventh Circuit but before the court made its decision, the Supreme Court issued its opinion in *Alleyne*, overturning *Harris* and holding that "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt." *Alleyne*, 133 S. Ct. at 2154.  The Supreme Court vacated the Fourth Circuit's judgment with respect to the defendant's sentence and remanded the case for resentencing.

Two months later, the Seventh Circuit decided Kirklin's appeal.  First, it rejected Kirklin's challenge to his conviction.  Noting that Kirklin affirmatively agreed to the jury instructions even when asked for comments or objections, the court found that he had waived the argument that the jury instructions were inadequate.  The court also held that "even if Kirklin's objection was only forfeited instead of waived, we are not persuaded that the instructions on the § 924(c) charge in Count 2 were vague or misleading." *Kirklin*, 727 F.3d at 716.

The Seventh Circuit also found Kirklin's sentencing challenge forfeited due to his failure to raise the issue in the district court, and it therefore reviewed Kirklin's sentence for plain error.  In light of the Supreme Court's decision in *Alleyne*, the government conceded and the Seventh Circuit concluded that this Court committed plain error by imposing the seven-year mandatory minimum on count two even though the jury was not asked to find brandishing beyond a reasonable doubt.  Observing that correcting an error not raised at trial requires an appellate court to find both that the error was plain and that it affected the appellant's substantial rights, the Seventh Circuit affirmed this Court's sentence.  It did so because it concluded that the Court's sentencing error did

5

not affect the fairness, integrity, or public reputation of the proceedings "given the significant amount of evidence of brandishing a firearm in the record." *Id.* at 719.

Kirklin's timely motion to vacate, set aside, or correct his sentence followed.

## Discussion

Section 2255 permits a defendant to move the trial court to vacate, set aside or correct the sentence if it was "imposed in violation of the Constitution . . . ." 28 U.S.C. § 2255(a). Kirklin seeks relief under section 2255 on three grounds. First, he contends that his counsel rendered ineffective assistance in violation of the Sixth Amendment, which entitles a defendant to assistance by a "reasonably competent attorney." *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). Second, he argues that the government's attorneys engaged in prosecutorial misconduct that deprived him of his constitutional right to a fair trial. Third, Kirklin argues that his conviction constitutes a fundamental miscarriage of justice due to his actual innocence.

**A.    Ineffective assistance of counsel**

Kirklin contends that he received ineffective assistance from his trial counsel in three ways. First, he argues that trial counsel failed him by not objecting to the presentencing report's recommendation of a seven-year mandatory minimum for brandishing, which led the appellate court to apply a highly deferential standard of review when he raised the issue on appeal. Kirklin says that had counsel raised the issue at sentencing, a more demanding standard of review would have led the Seventh Circuit to remand for resentencing. Second, he argues that trial counsel rendered ineffective assistance by failing to issue subpoenas to businesses near the robbed bank requesting security camera footage from any cameras they might have had pointed in

6

the bank's direction. Third, Kirklin claims that trial counsel was ineffective because he should have cross-examined Seidl and should have called McCallister to testify when the government chose not to do so.

The Seventh Circuit noted in a footnote in its decision in this case that "a claim must be advanced, if it is to be preserved, even when all precedent is contrary, otherwise [the appellate court] can only review for plain error." *Kirklin*, 727 F.3d at 717 n.2 (internal quotation marks omitted). Kirklin points to this footnote as support for his argument that his attorney rendered ineffective assistance at his sentencing by failing to argue that a jury needed to find brandishing beyond a reasonable doubt before the Court could impose a seven-year mandatory minimum sentence. He argues that his attorney should have known the longstanding, well-known rule about preserving objections, the failure to abide by which led the Seventh Circuit to review only for plain error. Kirklin contends that had it been able to apply a less deferential standard of review, the Seventh Circuit would have remanded for resentencing just as the Supreme Court instructed the Fourth Circuit to do in *Alleyne*.

"The Sixth Amendment to the United States Constitution guarantees the accused in a criminal case the right to the effective assistance of counsel." *Vinyard v. United States*, 804 F.3d 1218, 1224 (7th Cir. 2015). Under the rule set forth in *Strickland*, a petitioner may prevail on a claim of ineffective assistance of counsel if he shows "that counsel's representation fell below an objective standard of reasonableness" and "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687, 688.

The Court questions whether Kirklin can show that he was prejudiced by counsel's failure to argue this point. Many circuits have recognized that *Alleyne* is an

extension of the *Apprendi* doctrine, under which appellate courts review unpreserved errors for plain error and preserved errors for harmless error. *See, e.g.*, *United States v. Lewis*, 802 F.3d 449, 454 (3d Cir. 2015) (noting that the same standards of review apply to *Alleyne* and *Apprendi* errors); *United States v. Harakaly*, 734 F.3d 88, 94 (1st Cir. 2013) (same); *cf. Simpson v. United States*, 721 F.3d 875, 876 (7th Cir. 2013) ("*Alleyne* is an extension of *Apprendi* . . . ."); *Kirklin*, 727 F.3d at 717 (applying plain error review to an unpreserved sentencing error). Thus, to show prejudice, Kirklin must demonstrate that had he properly preserved his challenge, the Seventh Circuit would have found that the sentencing error was not harmless.

The government responds that the Seventh Circuit already rejected Kirklin's prejudice argument when it "found that the failure to submit the § 924(c) enhancement to the jury was plain error which affected his substantial rights, but which was not a miscarriage of justice." Gov.'s Resp., dkt. no. 9, at 6. The government's argument is essentially that the Seventh Circuit finding of no miscarriage of justice signals that the error below would be deemed harmless if subject to such standard of review.

The Seventh Circuit has not dealt directly with whether there is a difference between an *Alleyne* error that was raised in the appropriate way but is harmless and an *Alleyne* error that was not raised and thus is reviewed for plain error and is found not to have resulted in a miscarriage of justice. The court has, however, confronted this issue in the context of *Apprendi* errors. In *United States v. Mansoori*, 480 F.3d 514 (7th Cir. 2007), the court held:

> [T]he relevant inquiry on harmlessness review in *Apprendi* cases is the same inquiry posed on plain error review. As we observed in [*United States v. Nance*, 236 F.3d 820 (7th Cir. 2000)], [w]hether or not we are applying the stringent plain error screen, the *Apprendi* error . . . requires

8

> us to ask whether it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty beyond a reasonable doubt. The key distinction between the harmless error and plain error analyses lies in the assignment of the burden of persuasion—in plain error cases, it is the defendant's burden to prove that the error *was* prejudicial, whereas in harmless error cases it is the government's burden to prove that the error was *not* prejudicial. In either case, however, an appeals court is looking to the same record and engaging in the same basic inquiry to determine whether the error affected the outcome below and in that sense prejudiced the defendant.

*Mansoori*, 480 F.3d at 523 (internal citations and quotation marks omitted). It is reasonable to believe that the Seventh Circuit would take the same approach in considering *Alleyne* errors that it has taken in considering *Apprendi* errors. Under this approach, Kirklin cannot show prejudice from his lawyer's failure to assert the issue at trial, because the Seventh Circuit has already "engaged in the same analysis of the evidence that [it] would have engaged in had [it] determined that [the defendant] . . . had properly preserved" the argument. *Id.* at 524.

Other courts of appeal have offered divergent views on whether an *Alleyne* error like this one is harmless where, as the appellate court held here, the evidence was so overwhelming that a jury would certainly have found the relevant fact beyond a reasonable doubt. In *Lewis*, the Third Circuit, sitting en banc, confronted a case similar to Kirklin's. There, as here, a defendant was convicted of knowingly using and carrying, and aiding and abetting in the use and carrying of, a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c). Like Kirklin, the defendant was not indicted for brandishing. The jury was not instructed to, and did not, consider whether the defendant brandished the firearm. Unlike Kirklin, however, the defendant in *Lewis* objected at sentencing that imposing a seven-year mandatory minimum under section 924(c)(1)(A)(ii) rather than the five-year mandatory minimum under section

9

924(c)(1)(A)(i) violated his rights under the *Apprendi* doctrine. The judge overruled the defendant's objection and he lost on appeal, but the Supreme Court granted his petition for a writ of certiorari and remanded the case when the Court issued its decision in *Alleyne*. On remand, a panel of the Third Circuit held that "in light of the overwhelming and uncontroverted evidence in support of the brandishing element that, had the jury been properly instructed on that element, it would have found that element beyond a reasonable doubt. . . . Any resulting error was therefore harmless." *United States v. Lewis*, 766 F.3d 255, 271 (3d Cir. 2014) (internal quotation marks omitted).

Sitting en banc, the Third Circuit vacated the panel's opinion in *Lewis* and remanded the case for resentencing. Applying the harmless error standard, the court determined that because the *Alleyne* error did not involve a faulty indictment or a trial error but instead was a pure sentencing error, "[l]ooking back to the trial record would run directly contrary to the essence of *Apprendi* and *Alleyne*." *Lewis*, 802 F.3d at 456. The court explained: "The motivating principle behind *Apprendi* and *Alleyne* is that judges must not decide facts that change the mandatory maximum or minimum; juries must do so. If we affirm because the evidence is overwhelming, then we are performing the very task that *Apprendi* and *Alleyne* instruct judges not to perform." *Id.* Because there was no indication that the district judge had imposed more than the five-year mandatory minimum under section 924(c)(1)(A)(i) for any other reason than to meet the seven-year mandatory minimum under section 924(c)(1)(A)(ii), the court remanded the case for resentencing. *Id.* at 457–58.

The First Circuit responded differently in a similar case. In *United States v. McIvery*, 806 F.3d 645 (1st Cir. 2015), the defendant pled guilty to one count of

conspiracy to possess crack cocaine with intent to distribute and two counts of possession with intent to distribute crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. *Id.* at 647. The indictment did not specify the precise amounts involved, and the defendant did not admit to the specific quantities involved, though the government specified quantities involved during the change-of-plea hearing. *Id.* at 648. Prior to his sentencing, the defendant challenged the applicability of a mandatory minimum sentence based on the quantity of crack cocaine possessed, on the ground that attributing a particular amount to trigger the statutory mandatory minimum "would entail the use of a fact not charged in the indictment." *Id.* The district court rejected the defendant's argument because it was foreclosed by *Harris*, and it applied the statutory mandatory minimum. The Supreme Court decided *Alleyne* while the case was pending on appeal.

In contrast to the Third Circuit—and acknowledging that its holding was directly contradictory to its sister circuit's—the First Circuit affirmed the district court's judgment. Applying a harmless error standard, the court observed:

> The district court accurately described the evidence of the defendant's guilt as "overwhelming," and the evidence that the offense conduct involved twenty-eight grams or more of crack cocaine is uncontested. . . . On this record, a reasonable jury could not have found that the defendant was responsible for less than the requisite drug quantity.

*Id.* at 651. Accordingly, the First Circuit found the district court's error harmless beyond a reasonable doubt.

The Court cannot say with complete certainty whether the Seventh Circuit, had it applied a harmless error standard rather than a plain error standard, would have remanded Kirklin's case for resentencing in light of *Alleyne*. Under the First Circuit's

11

approach, as under the Seventh Circuit's approach to *Apprendi* errors, the court likely would have come to the same conclusion it reached applying the plain error standard. After all, the uncontroverted testimonial and video evidence established that Jones and McCallister brandished firearms during the commission of the robbery, using them to threaten bank customers. Had it followed the Third Circuit's approach, however, the Seventh Circuit likely would not have found Kirklin's sentencing error harmless, for the relevant inquiry would be "whether [defendant's] sentence would have been different had he been sentenced for using or carrying, rather than brandishing." *Lewis*, 802 F.3d at 458.

The Court need not determine definitively whether Kirklin was actually prejudiced by his counsel's failure to preserve the *Alleyne* error. If a section 2255 petitioner fails to show that one component of the *Strickland* test has been satisfied, a court may reject the claim without considering the other. *Pole v. Randolph*, 570 F.3d 922, 940 (7th Cir. 2009) (citing *Strickland*, 466 U.S. at 697, and *Pearson v. Callahan*, 555 U.S. 223, 241 (2009)). In light of the well-established rule that "[t]he Sixth Amendment does not require counsel to forecast changes or advances in the law," *Valenzuela v. United States*, 261 F.3d 694, 700 (7th Cir. 2001), counsel's failure to preserve an argument against the continued vitality of Supreme Court precedent is not considered to be objectively substandard. *See also Walker v. United States*, 810 F.3d 568 (8th Cir. 2015) (failure to assert *Alleyne*-type issue less than a year before *Alleyne* was decided did not constitute ineffective assistance).

Kirklin's other ineffective assistance claims also fail to satisfy the *Strickland* test. As the Seventh Circuit recently reiterated:

> To satisfy the deficient performance prong, a petitioner must show that the representation his attorney provided fell below an objective standard of reasonableness. A court's scrutiny of an attorney's performance is highly deferential to eliminate as much as possible the distorting effects of hindsight, and we must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Under these standards, strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.

*Vinyard*, 804 F.3d at 1226 (internal citations and quotation marks omitted). Kirklin contends that trial counsel should have subpoenaed businesses neighboring the robbed bank to request security footage to show that he was not at the scene of the crime, should have cross-examined Seidl about the bank's security camera footage, and should have called McCallister to testify to undermine Jones's testimony. The government responds that these were strategic decisions that were reasonably made after thorough investigation and that they had no prejudicial impact on Kirklin's defense.

Kirklin's argument regarding the security camera footage seems to be that his attorney did not thoroughly investigate before determining that he would not subpoena local businesses. This might also be Kirklin's argument as to his attorney's failure to call McCallister and cross-examine Seidl, though it is not clear from his submissions whether he alleges his counsel did not conduct a thorough investigation. An attorney's "decision to call or not to call a witness is typically not subject to review. The Constitution does not oblige counsel to present each and every witness that is suggested to him." *United States v. Best*, 426 426 F.3d 937, 945–46 (7th Cir. 2005); *see United States v. Berg*, 714 F.3d 490 (7th Cir. 2013). But "although [courts] defer to *strategic* decisions, [they] must first assure [them]selves that a strategic decision was made, because the consequences of inattention rather than reasoned strategic

decisions are not entitled to the presumption of reasonableness." *Carter v. Duncan*, No. 13-2243, 2016 WL 1237794, *9 (7th Cir. Mar. 30, 2016).

Even if his counsel made no investigation regarding any of this potential evidence and testimony, Kirklin was not prejudiced by counsel's decision not to present it. First, Kirklin has not given the Court any reason to believe that neighboring buildings had security cameras, let alone footage that would have depicted anything relevant. Just as importantly, this evidence would have had little probative value; Kirklin argues not that photographic or video evidence would have placed him elsewhere or otherwise exonerated him, but rather that video cameras near the scene did not picture him or his vehicle. Second, cross-examining Seidl to make it clearer to the jury that none of the bank's security footage showed Kirklin at the scene of the crime would not have meaningfully benefitted his defense; testimony by Seidl that simply repeated what the jury had seen or could see on the video would have added nothing of substance. Third, by Kirklin's own account, McCallister was no less tainted a potential witness than Jones, having given contradictory statements in the past himself. *Cf. Carter*, 2016 WL 1237794, at *13 (noting that failing to call a nonbiased witness where his testimony would potentially contradict a biased witness's testimony might prejudice the defendant); *Montgomery v. Petersen*, 846 F.2d 407, 414 (7th Cir. 1988) ("Every one of the[] witnesses had a reason to be biased. Given the standoff between two factions in this family, one group supporting [one person] and the other group supporting the petitioner, independent corroboration by a neutral, disinterested witness would perforce be extremely significant."). There is no basis in the record to believe that counsel's failure to call McCallister to testify prejudiced Kirklin's defense.

To the extent Kirklin argues that his trial counsel reasonably investigated his possible defenses but made strategic decisions not to present certain evidence, his ineffective assistance claim fails the first part of the *Strickland* test. *See United States v. Berg*, 714 F.3d 490 (7th Cir. 2013). To the extent he argues trial counsel failed to reasonably investigate possible defenses, Kirklin has failed to show prejudice because he has not plausibly alleged that the testimony and evidence he believes should have been presented would have affected the outcome of his case.

For these reasons, the Court overrules Kirklin's ineffective assistance claims.

**B.    Prosecutorial misconduct**

In the first statement Jones gave to law enforcement in the wake of the robbery, she claimed that she and McCallister were responsible for the crime. When she was interviewed again, this time represented by counsel, she implicated Kirklin. Jones then testified against Kirklin before the grand jury and again at his trial. Kirklin now contends that his conviction should be vacated because the government's attorneys engaged in prosecutorial misconduct by suborning perjury when they called Jones to testify and elicited testimony that contradicted the statement she initially gave to law enforcement.

Relief under section 2255 is available only if the trial court has committed "an error which is [either] jurisdictional [or] constitutional. It [must be] a fundamental defect which inherently results in a complete miscarriage of justice . . . ." *Hill v. United States*, 368 U.S. 424, 427 (1962). A motion under section 2255 is not a substitute for direct appeal, and "[a] claim cannot be raised for the first time in a § 2255 motion if it could have been raised at trial or on direct appeal." *McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016). Claims not raised at trial or on direct appeal are procedurally

15

defaulted and may be brought only if the prisoner "shows both cause and prejudice for the default." *Id.*; *Hale v. United States*, 710 F.3d 711, 713 (7th Cir. 2013). "Absent a showing of both cause and prejudice, procedural default will only be excused if the prisoner can demonstrate that he is actually innocent of the crimes of which he was convicted." *McCoy*, 815 F.3d at 295; *Torzala v. United States*, 545 F.3d 517, 522 (7th Cir. 2008).

Kirklin did not argue on direct appeal that the government's attorneys engaged in prosecutorial misconduct, and he has not shown cause or prejudice for defaulting on this issue. In his reply memorandum, Kirklin argues that his procedural default should be excused because he is actually innocent of the crime for which he has been convicted. "In federal habeas law, the actual innocence exception is one application of the broader 'fundamental miscarriage of justice' exception to procedural default intended to ensure that 'federal constitutional errors do not result in the incarceration of innocent persons.'" *Gladney v. Pollard*, 799 F.3d 889, 895 (7th Cir. 2015). Because "[t]he actual innocence gateway is narrow," however, procedural default can be excused on actual innocence grounds only if the defendant "presents evidence not previously considered." *Id.* at 896. He must "present[] evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless error." *Schlup v. Delo*, 513 U.S. 298, 316 (1995).

The type of evidence a petitioner can present to advance an actual innocence claim can take the form of any "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *Id.* at 324. When such evidence is presented, a court considers "the total record—'all the

evidence, old and new, incriminatory and exculpatory'—and makes 'a probabilistic determination about what reasonable, properly instructed jurors would do." *Gladney*, 799 F.3d at 896 (quoting *House v. Bell*, 547 U.S. 518, 538 (2006)); *Coleman v. Lemke*, 739 F.3d 342, 349 (7th Cir. 2014). But Kirklin has offered no new evidence whatsoever. Instead, he argues that he is innocent and that it was improper for the government to offer the testimony of a witness (Jones) who had made prior inconsistent statements. These are propositions that were available to Kirklin at trial, and the latter point, at least, was made clear to the jury when Kirklin's counsel cross-examined Jones. "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Schlup*, 513 U.S. at 316. Kirklin has procedurally defaulted on his claim of prosecutorial misconduct, and he has not shown any reason his default should be excused. The Court therefore dismisses this claim.

**C.     Actual innocence**

Finally, Kirklin asserts his actual innocence as a separate claim for relief. As explained above, Kirklin's failure to point to any new evidence is fatal to any actual innocence claim. *Id.* Read closely, however, Kirklin's stand-alone actual innocence claim is in fact an insufficiency of the evidence claim. Kirklin argues that his conviction should be vacated because the government did not present witnesses who corroborated Jones's testimony, Kirklin's fingerprints were not found on any of the items used in the robbery, and no testimony definitively placed him at the scene of the crime. Without such evidence and testimony, he appears to argue, a reasonable jury could not

17

convict him.

Even construed this way, this claim must be dismissed. Like his prosecutorial misconduct claim, an insufficiency of the evidence claim was available to Kirklin on direct appeal, and he did not make it. He has not shown cause or prejudice for his failure to raise this argument on appeal, so he has procedurally defaulted on this claim. And because he has not offered any new evidence to show he is actually innocent of the crimes for which he was convicted, the Court cannot excuse his default. Whether construed as a challenge based on actual innocence or on insufficiency of the evidence, Kirklin's last claim must be dismissed.

## Conclusion

For the foregoing reasons, the Court directs the Clerk to enter judgment dismissing defendant Tyrone Kirklin's motion under 28 U.S.C. § 2255. The Court issues a certificate of appealability on defendant's ineffective assistance claim regarding trial counsel's failure to raise the *Alleyne* issue regarding the "brandishing" enhancement. The Court declines to issue a certificate of appealability on defendant's remaining claims, because it can find nothing to suggest that the merits of those claims are debatable, capable of different resolution, or deserving of further consideration. *See* 28 U.S.C. §2253(c)(2); *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983); *Porter v. Gramley*, 121 F.3d 1308, 1312 (7th Cir. 1997).

	_____
	MATTHEW F. KENNELLY
	United States District Judge

Date: May 10, 2016